Our next case for argument is Sehgal v. Lynch. Ms. Shepard. Good morning, Your Honor. Counsel, may it please the Court. I'm Shannon Shepard on behalf of the appellants. The evidence that the agency relied on to conclude that the beneficiary, Mohit Sehgal's, first marriage was fraudulent did not constitute substantial and probative evidence. The probative evidence that was submitted in the marriage... His own sworn statement? Sorry? His own sworn statement? Both his sworn statements... Supported that conclusion, correct? So the beneficiary also recanted that 2009 sworn statement in a 2011 interview with Immigration and then further provided additional affidavits, sworn affidavits after that. The other evidence that the agency relied on was simply the handwritten letter that it obtained from the beneficiary's ex-wife. And in no other type of case would a party or an adjudicative body be allowed to rely so heavily on a handwritten letter that came out of nowhere. USCIS falsely referred to the ex-wife's letter before it was actually provided to us as a sworn statement. But once the federal litigation was filed, and it was only in response to the federal litigation, that we actually saw this letter was a handwritten statement that we have no idea where it came from, what prompted it three years after their divorce, who it was addressed to, why or whether or not the ex-wife voluntarily wrote it. Those unanswered questions just make the letter hearsay that's not probative. The agency's reliance on this letter in the face of all the other positive evidence that was submitted could bar this person from ever obtaining a green card. So that is why the Board of Immigration Appeals has held that the standard for making a fraud finding in a marriage case is substantive and probative evidence. So although in this case the agency did disclose the contents of this ex-wife's letter, this case provides a great example of why USCIS should also require that you have an actual opportunity to examine the letter itself. Because again, they repeatedly, in the notice of intent to deny and the decisions, referred to it as a sworn statement, when in fact there was no attestation of truthfulness, it was a handwritten letter, and there was no chain of custody or any other information about where this letter came from. And had the petitioner known this in advance of having to file this lawsuit after the board denied the appeal, there could have been other arguments made, other steps taken to determine the sufficiency of the letter, to argue against its reliability, to request a more detailed explanation of where it came from, to hire a handwriting expert to examine it. But the petitioner was not given the opportunity to do any of these things because prior to filing the appeal in district court, the petitioner was under the impression that this letter from the ex-wife was in fact a sworn statement. Didn't the marriage broker who pled guilty also admit that this was a sham marriage that she had arranged in return for pay? Not in this specific case. That marriage broker was in fact, as I'm sure the court's aware, convicted of that. But this particular case was not part of that litigation. So although she does have a bad reputation and conviction in that case, it doesn't mean that every single case she touched was fraudulent. And in this case, the agency simply relied on that fact, drew its own conclusions, and didn't look at all of the other positive evidence. The two petitions, the fact that the ex-wife filed two petitions, they submitted a lot of evidence of joint accounts and other items that would normally be taken as evidence of a bona fide marriage. So their reliance on this one letter and on this statement that was later recanted by Mr. Seagal, he claimed that he was under duress at the time, he was in pain. Was the agency required to take those claims at face value? His torture claims? He also provided evidence that he had been in an accident, that he was on medication. Well, that's not at all consistent with what he said in the statements. Was the agency required to take what he said at face value? They were required to consider it, certainly. That's not my question. And they simply disregarded it. I mean, they disregarded them. They didn't take them at any value. So, yes, I suppose my answer would be yes. Okay, thanks very much, Ms. Shepard. Mr. Defoe. May it please the Court, Craig Defoe for the appellees. Your Honors, this case contains more than enough evidence to be substantial and probative of the marriage fraud at issue here. In fact, the evidence in the record really supports only one plausible conclusion, and that's that Mr. Segal's marriage to Ms. Miller was fraudulent. Well, it doesn't have to support only one conclusion for you to win, but I'm troubled by the government's sloppiness with respect to repeatedly describing Ms. Miller's statement as swan, which ordinarily the agency treats as an important feature of such a statement. I understand that, Your Honor. I don't believe the agency repeatedly referred to it as swan. I know that the BIA did in its initial decision, but it also made clear in that decision that it was reviewing the correct statement and that it had that statement in front of it and thus clearly knew that it was not swan. How did it know that if it was saying it was swan? I think the reference to it being swan is just an error. Clearly it's an error. What I'm saying is I don't think there was a misperception on the part of the BIA or the USCIS that it was swan. If that were the only evidence, would that be a troubling problem in terms of the result? If that handwritten statement were the only evidence of marriage fraud? Yes. That obviously would be a very different case than what we have here. Given the weight that the BIA gives to whether a statement is under oath or not? Well, I would disagree that the BIA necessarily gave it any more weight based on its erroneous statement that it was swan. The BIA clearly stated that it had that statement in front of it, that the statement was part of the record of proceedings. Was there a reason why it wasn't provided to the petitioners or the plaintiffs in this case? I believe the only reason is that USCIS doesn't do that in the normal practice. That's not really a reason. I mean, if this is the probative evidence that the agency is going to be relying upon, it would seem to me fairly elementary that you provide a copy or an opportunity to inspect. Well, I understand that maybe that's a better practice from the appellant's point of view, and obviously- Not just from the appellant's point of view. From the point of view of due process, fair procedures for decision-making. Sure. Well, I understand that, too. And despite that, this Court's decisions have made clear that that's not required as a matter of under the regulation or as a matter of due process. That you're not required to show the evidence that you're relying upon? That you're not required to give the petitioner an opportunity to actually see the physical document. This Court made that clear in the Agbo-Lumani decision and also in Ghali. Obviously, the agency would be free to do that, and perhaps at some point they should change their practice and do that, but it's not legally required, and that's all I'm- What sense does that make? That it's not legally required? Well, it's just a simple reading of the regulation, I think. A mindless regulation, in other words. You don't have to defend the regulation if you don't want to. Well, the regulation isn't being challenged here, and frankly, there was a lot more process given in this case than was given in the Agbo-Lumani and Ghali decisions. The letter was quoted verbatim. It was actually referenced as a handwritten letter, too. So I don't think there was confusion on that point, and even if we set that letter completely aside and you just look at Mr. Seagal's sworn statement and the narratives that sort of arise from that statement versus his later recantations of the statement, there's really only one plausible story here, and that's what the district court stated, too, which is that his story of a valid marriage doesn't make sense. If you look at his recantations and the original evidence that they submitted of the marriage, what makes sense is what he admitted to in his sworn statement, and he initialed and signed the pages of that statement. They were attempting to defraud USCIS for five years here. It didn't succeed, and Congress has created a harsh result for that. I'd ask this court. Okay. Well, thank you very much, Mr. Defoe. And Ms. Shepard, your time ran out. If you want another minute, you can have it. Thank you. I would just like to briefly reiterate that the only evidence, there were only two pieces of evidence contrary to the marriage. One was this unsworn statement, and one was the sworn statement of Mr. Segal, which he alleges that he was in pain, he was on medication, he has evidence that he was in an accident before that, and it seems highly unlikely that he would have been able to produce a two-and-a-half-page, single-spaced affidavit under those circumstances. The other quick point that I wanted to make was that although the BIA was likely not confused about the nature of the statement of the ex-wife because they had it in front of them, the petitioner was not given notice of the nature of that. And as I mentioned before, there were other arguments and steps that could have been taken to counter that had they known that it was not, in fact, a sworn statement. And I think that's a very egregious mistake of the agency. Okay. Well, thank you very much, Ms. Shepherd. So our last